In re Robert G. MEECE, Debtor.

Rolex Watch U.S.A., Inc., Plaintiff,

v.

Robert G. Meece, Defendant.

Bankruptcy No. 00–33982–SAF–7.
Adversary No. 00–3499.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 9, 2001.

David F. Staber, Akin, Gump, et al., Dallas, TX, for Plaintiff.

Jeffrey P. Prostok, Forshey & Prostok, Ft. Worth, TX, for Defendant.

### MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

Robert G. Meece, the defendant, moves the court for summary judgment dismissing the complaint of Rolex Watch U.S.A., Inc. Rolex moves the court to strike and deny Meece's motion. In addition, Rolex opposes Meece's motion and cross moves for summary judgment. Meece opposes the cross-motion. The court conducted a hearing on the motions on February 1, 2001.

Rolex obtained a judgment against Meece from the United States District Court for, among other things, $245,648.49 under 15 U.S.C. §§ 1114 and 1117(b) plus attorney's fees of $160,000. In this adversary proceeding, Rolex contends that the judgment may not be discharged pursuant to 11 U.S.C. § 523(a)(6). In addition, Rolex objects to the discharge of Meece pursuant to 11 U.S.C. § 727(a)(2) and (a)(4)(A).

■ In his motion, Meece argues that Rolex is precluded from contending that the judgment may not be discharged under § 523(a)(6) and that there are no genuine issues of material fact to support an objection to discharge. Meece filed his motion on December 12, 2000. Meece did not file a brief with the motion as required by District Court Local Rule 56.1, made applicable by Local Bankruptcy Rule 7056.1. On January 12, 2001, Rolex filed its objection to Meece's motion with its cross-motion and brief. Meece filed his brief in support of his motion on January 12, 2001. Because Meece did not comply with the local rule, Rolex could not address in its brief the points raised by Meece in his brief. Then, on January 25, 2001, Meece filed additional affidavits in support of his motion. On January 29, 2001, Rolex moved to strike the late filed briefs and affidavits. At the hearing, Rolex contended that as a consequence the court should deny Meece's motion for non-compliance with the rule. The court grants that motion.[1]

1. Even though the court grants the motion to      strike Meece's motion for summary judgment,

■ In its cross-motion for summary judgment, Rolex contends that under the doctrine of collateral estoppel, the judgment debt is excepted from discharge under § 523(a)(6). Meece opposes that motion, contending, in turn, that the district court's judgment precludes Rolex from now litigating that the debt is excepted from discharge. Even though the court has struck Meece's motion for summary judgment, the court may grant judgment for Meece if he is entitled to a judgment as a matter of law. *See Apex Oil Co. v. Archem Co.,* 770 F.2d 1353, 1356 n. 3 (5th Cir.1985).

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988). On a summary judgment motion the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A factual dispute bars summary judgment only when the disputed fact is determinative under governing law. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

The movant bears the initial burden of articulating the basis for its motion and identifying evidence which shows that there is no genuine issue of material fact. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The respondent may not rest on the mere allegations or denials in its pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ Section 523(a)(6) excepts from an individual debtor's discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). A "willful" injury requires "a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (emphasis in original). To establish an intentional injury, the creditor must establish "either an objective substantial certainty of harm or a subjective motive to cause harm." *In re Miller,* 156 F.3d 598, 606 (5th Cir.1998), *cert. denied,* 526 U.S. 1016, 119 S.Ct. 1249, 1250, 143 L.Ed.2d 347 (1999). In addition to being willful, the injury must be "malicious." 11 U.S.C. § 523(a)(6). Malicious means "without just cause or excuse." *In re Garner,* 56 F.3d 677, 681 (5th Cir.1995). The Supreme Court in *Kawaauhau* did not collapse the malicious definition into the willful injury definition nor otherwise read the words "and malicious" out of the statute. *In re Grisham,* 245 B.R. 65, 71 (Bankr.N.D.Tex.2000). Accordingly, "[a] debtor may act deliberately or intentionally but have just cause or excuse to do so." *Id.* Thus, a debt arising from the debtor's infliction of an intentional injury is dis-

if the court considered the motion for summary judgment on the merits, the court would deny the motion with regard to the § 727 issues. The competing summary judgment evidence establishes genuine issues of material fact regarding § 727(a)(2) and (a)(4)(A). The summary judgment evidence supports competing inferences which precludes summary judgment.

chargeable if the debtor had just cause or excuse for inflicting the intentional injury.

■ Both parties contend that the district court judgment precludes relitigation of willful and malicious injury under § 523(a)(6). Issue preclusion, formerly known as collateral estoppel, applies when the following elements are met:

(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action.

*Southmark Corp. v. Coopers & Lybrand (In re Southmark)*, 163 F.3d 925, 932 (5th Cir.1999). Both parties maintain that all three elements have been established, but they draw opposite conclusions of law.

The United States District Court found that Meece did not intentionally infringe the Rolex trademarks, *see Rolex Watch U.S.A., Inc. v. Meece*, No. 3:95–CV–1058–T, slip op. at 9 (N.D.Tex. Aug. 11, 1997) [hereinafter Dist. Ct. Op.], but that Meece intentionally used marks on enhanced watches, converted used watches and non-genuine bracelets with genuine Rolex clasps that caused them to be counterfeit within the statutory definition of the Lanham Act, 15 U.S.C. § 1114. *See Rolex Watch U.S.A., Inc. v. Meece*, No. 3:95–CV–1058–T, slip op. at 11 (N.D.Tex. Jan. 25, 2000) [hereinafter Dist. Ct. Op. on Remand]. As a result, the court did not award damages under 15 U.S.C. § 1117(a) for trademark infringement but awarded damages under § 1117(b) for trademark counterfeiting. Simply put, Rolex argues that trademark counterfeiting necessarily includes an intent to injure within the meaning of § 523(a)(6). Meece argues, to the contrary, that the finding of a lack of intent for trademark infringement precludes a finding of an intent to injure.

■ Under 15 U.S.C. § 1117(a), a court may award the holder of a trademark the defendant's profits, the holder's damages and the costs of the action for a violation of 15 U.S.C. § 1114(1)(a) if the defendant had an intent to confuse or deceive. *Rolex Watch U.S.A., Inc. v. Meece*, 158 F.3d 816, 823–24 (5th Cir.1998), *cert. denied*, 526 U.S. 1133, 119 S.Ct. 1808, 143 L.Ed.2d 1011 (1999) [hereinafter Fifth Circuit Op.]. For recovery by the holder of the trademark under § 1117(a), the defendant must have acted with willful deception and in bad faith. *Id.* Willful infringement carries a connotation of deliberate intent to deceive. *Id.* at 823. In addition, § 1117(a) permits an award of attorney's fees in exceptional circumstances, which requires that a defendant's trademark infringement be malicious, fraudulent, deliberate or willful. *Id.* at 824.

■ The district court found that Meece did not engage in deliberate infringement for a recovery under § 1117(a). To the contrary, the district court found that Meece attempted to "ride the line" but "did not intend to cross" the line between the legitimate sale of replacement parts and the complete conversion of a watch into an infringing product. Dist. Ct. Op. at 8. The Fifth Circuit affirmed that finding. Fifth Circuit Op. at 827–28. Since Meece was found to lack an intent to deliberately infringe the Rolex trademark, he could not have intended to injure Rolex.

However, under 15 U.S.C. § 1117(b), the court shall, unless extenuating circumstances exist, award the holder of a trademark treble damages or profits plus attorneys fees for a violation of § 1114(1)(a) that "consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark" in connection with the sale or distribution of goods or services. 15 U.S.C. § 1117(b). The

Fifth Circuit remanded the action to the district court to determine whether Meece's use of marks on enhanced new watches, converted used watches and non-genuine bracelets with genuine Rolex clasps caused them to be "counterfeit" within the meaning of 15 U.S.C. §§ 1116(d) and 1127, and, if so, to determine the recovery for Rolex under § 1117(b). Fifth Circuit Op. at 827.

On remand, the district court found that Meece used marks on goods covered by the Rolex registration, and his use was unauthorized by Rolex. Dist. Ct. Op. on Remand at 7. The court found that Meece's use of these marks on enhanced new watches and converted used watches constituted trademark counterfeiting and that Meece's placement of original Rolex clasps on non-genuine bracelets increased the likelihood of confusion as to the genuineness of the watch, and that constituted counterfeiting under the statute. *Id.* at 7–8. The court further found: "The statutory damages provision in the counterfeit statute requires only that the defendant intentionally use a mark knowing it to be counterfeit. A finding of intent to deceive is not required for a finding of counterfeiting. *See* 15 U.S.C. § 1117(c) (listing two specific categories of counterfeiting: (1) use of a counterfeit mark and (2) *willful* use of a counterfeit mark)." *Id.* at 9.

The court then awarded recovery under § 1117(b) because the use of the marks on watches Meece knew were assembled without Rolex's approval constituted intentional use of a mark knowing it to be counterfeit. *Id.* The court found no extenuating circumstances under § 1117(b) to preclude the statutory damages award. *Id.*

The court further found, however, that the marks used by Meece would not cause confusion with the Rolex trademark. The court found that Rolex customers are very sophisticated and would not likely be con-fused by the marks used by Meece. *Id.* at 11.

The court, on remand, reiterated its finding that Meece did not intentionally infringe the Rolex trademarks. *Id.*

As a result of these findings, the district court concluded that Meece's use of marks on the enhanced watches, converted used watches, and non-genuine bracelets with genuine Rolex clasps caused them to be counterfeit within the statutory definition, but that Meece's mark on non-genuine bracelet clasps is not confusingly similar to the Rolex design. *Id.* at 11–12.

Rolex argues that the finding of counterfeiting necessarily requires a finding that Meece intended to injure Rolex. Rolex asserts that the finding of intentional use of a counterfeit mark meets, as a matter of law, the element of willful and malicious injury under § 523(a)(6). The conclusion does not follow from the premise.

The district court found an intentional use of a counterfeit mark. But the district court concluded that a finding of intent to deceive was not required for a statutory finding of counterfeiting. The court noted that counterfeiting could be the use or the willful use of a counterfeit mark. In this case, the court did not find a willful use. Indeed, the court also found no intentional infringement of the trademark and no consumer confusion. The court found that Meece's product is typically passed from a jeweler to a person who has placed a special order through the jeweler for the product, unlike Rolex's distribution of its products to the public. Unlike Rolex, Meece advertises his products and services only to retail jewelers. Meece's advertisements state that the parts he adds are generic replacement parts, and his d/b/a/ name is prominently displayed on all advertisements along with a disclaimer that Meece is not a dealer or affiliated with

Rolex in any way. Dist. Ct. Op. on Remand at 10–11.

These findings reflect that the district court found counterfeiting within the statutory definition but not ill intent by Meece. While the court found that Meece knowingly used a counterfeit mark, the court found no ill intent with that use, and no confusion to Rolex's customers. As the court found that Meece did not willfully use the counterfeit mark and did not cause consumer confusion, he necessarily could not have intended to injure Rolex. These findings preclude a finding of "willful" injury under § 523(a)(6).

Rolex argues, nevertheless, that the statutory scheme compels a conclusion that a finding that triggers recovery under § 1117(b) must include an intent to injure. The statute imposes monetary recovery for counterfeiting where the defendant intentionally used a mark knowing it to be counterfeit. A willful injury under § 523(a)(6) requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Kawaauhau*, 523 U.S. at 61, 118 S.Ct. 974. Section 1117(b) requires a finding of an intentional act, i.e., intentional use of a mark, knowing such mark is a counterfeit mark; the section does not require a finding of a deliberate or intentional injury to the holder of the trademark. And, here, the district court's findings preclude a finding of a deliberate or intentional injury to Rolex because the district court found that Meece did not intentionally infringe the Rolex marks.

The court may not read the intent to injure requirement into the statute. The statutory scheme does not require that the holder of a trademark prove an intent to injure the holder to recover damages under § 1117(b) for a violation of § 1114. *See El Greco Leather Products Co. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir.

1986), *cert. denied*, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 34 (1987); *Procter & Gamble Co. v. Quality King Distributors, Inc.*, 123 F.Supp.2d 108, 112–13; *3 McCarthy on Trademarks and Unfair Competition*, § 23:107, at 23–248 to 23–251 (4th ed.2000). The statutory scheme focuses on the probable reaction of buyers, without a requirement of the subjective state of mind of the defendant. This reflects the policy basis of modern trademark law that "the law should protect buyers against a likelihood of confusion, not solely to punish evil wrongdoers who intended to defraud buyers. That is, it was realized that even business people acting in good faith could, by their actions, cause confusion of buyers by the use of trade symbols similar to those used previously by other sellers. Thus ... emphasis is placed on the objective facts of likely customer confusion, rather than upon the subjective mental state of the infringer." *Id.* at § 23.104.

Having found the intentional use, the district court could impose damages under § 1117(b) without necessarily finding Meece's subjective mental state. The finding of intentional use therefore does not result in an implicit finding of an intent to injure Rolex.

But, beyond the objective application of the statute, the district court found that Meece did not intentionally infringe Rolex marks, and that there was no evidence of actual consumer confusion. Dist. Ct. Op. on Remand at 11. As the Fifth Circuit recognized, Meece did not intend that his products be passed off as Rolex products. His advertising indicated that his products were not Rolex products, and his business was not affiliated with Rolex. Fifth Circuit Op. at 828. The district court noted that Rolex and Meece co-existed for over ten years. Dist. Ct. Op. at 4. Meese advertised and sold his products only to retail jewelers, not to ultimate consumers.

*Id.* at 5. His advertising material to retail jewelers attempted to disclose that he was not affiliated with Rolex and that the addition of his parts to genuine Rolex watches voided the Rolex warranty. *Id.* The district court declined to impose punitive damages. *Id.* at 9.

These findings preclude a finding of intent to injure Rolex. With these findings, Rolex is precluded from asserting that Meece's acts, however knowingly done, had the objective certainty of harm or the subjective motive to cause harm to Rolex.

Rolex argues that Meece should not be allowed to escape the trademark sanctions by "simply" filing a bankruptcy petition. It has been the experience of this court that most people do not "simply" file a bankruptcy petition. Rather, people tend to seek protection under the Bankruptcy Code after considerable deliberation and often with great anguish. But, beyond that, the Bankruptcy Code remains an act of Congress, with Congress determining that people should have available a "fresh start," discharged from their debts, with certain exceptions. Had Congress concluded that trademark counterfeiting without ill intent should be excluded from a discharge, Congress would have so legislated. *See, e.g.*, 11 U.S.C. § 523(a)(12) and (a)(13).

Lastly, the court notes that had the district court only tried issues of recovery under § 1117(b) for a violation of § 1114, the court may not have entered findings on Meece's intent, beyond an intent to knowingly use a mark. But, as summarized above, the parties actually litigated trademark infringement and consumer confusion, and therefore the district court adjudicated the issues with supporting findings of fact. Those findings preclude a finding of malicious injury under § 523(a)(6).

As a result, Meece's intent had been at issue before the district court. The dis-

trict court could not adjudicate the range of remedies available for a violation of 15 U.S.C. § 1114 without determining Meece's intent with regard to infringement, confusion and willful use of a mark. The determination had been part of the district court's judgment. The findings preclude a finding of willful injury under § 523(a)(6).

Because the willful injury analysis is dispositive, the court does not address the malicious component of § 523(a)(6).

Based on the foregoing,

**IT IS ORDERED** that the motion of Rolex Watch U.S.A., Inc., for summary judgment is **DENIED** and that Robert G. Meece shall have a judgment dismissing the complaint under 11 U.S.C. § 523(a)(6).

**IT IS FURTHER ORDERED** that the motion of Robert G. Meece for summary judgment is **DENIED**, resulting in the complaint under 11 U.S.C. § 727 being set for trial.