**BETTY'S HOMES, INC., Appellant**

v.

**COOPER HOMES, INC., Appellee.**

**Civil No. 08–5231.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Aug. 27, 2009.

---

Stanley V. Bond, Fayetteville, AR, for Appellant.

Frank H. Falkner, Herbert Charles Rule, III, Rose Law Firm, Little Rock, AR, for Appellee.

### ORDER

JIMM LARRY HENDREN, District Judge.

Now on this 27th day of August, 2009, comes on for consideration this cross appeal from the United States Bankruptcy Court for the Western District of Arkansas. The matter is fully briefed, and ripe for decision.

1. Appellant Betty's Homes, Inc. ("Betty's") is a homebuilder in Northwest Arkansas. Appellee Cooper Homes, Inc. ("Cooper") supplied building materials for a number of Betty's projects.

In July, 2006, Cooper advised Betty's that it was preparing to file materialman's liens on a number of Betty's properties, as a result of overdue accounts. Betty's, although in difficult financial circumstances, was able to draw down $200,000 on construction loans at Community First Bank to pay Cooper. The money was issued in the form of a cashier's check, and delivered directly to Cooper on August 1, 2006.

Eighty days later, on October 20, 2006, Betty's filed a Chapter 11 Voluntary Petition in the United States Bankruptcy Court for the Western District of Arkansas.

2. On November 28, 2007, Betty's filed a Complaint To Avoid Preference against Cooper, alleging that the $200,000 payment to Cooper was an avoidable preference, and seeking to have the monies returned.

Cooper answered, admitting receipt of the $200,000, but denying the other material allegations of the Complaint To Avoid Preference. Cooper then moved for summary judgment, contending that the payment was not a "transfer of an interest of the debtor in property," and therefore not an avoidable preference. It relied on the "earmarking doctrine," where by agreement a new creditor can pay off the debt of an old creditor, and the payment will not be considered a preference in bankruptcy so long as the transaction, viewed as a whole, does not diminish the estate of the debtor. *In re Bohlen Enterprises, Ltd.*, 859 F.2d 561, 566 (8th Cir.1988).

3. Summary judgment was denied, and the Complaint To Avoid Preference was tried on July 31, 2008. At trial, Jody Latham, CEO of Cooper, testified that as of August 1, 2006, Cooper was an unsecured creditor of Betty's, and that she had not sent a "ten day notice" (a lien notice) at that time, although "I had the right to." [1] She testified that on August 16, 2006, she sent out ten-day notices on 38 lots, and that liens were subsequently filed prior to Betty's filing bankruptcy.

The Bankruptcy Court held, *inter alia:*

\* that Community First Bank was a secured creditor at the time of the transfer;

\* that Cooper was not a secured creditor at the time of the transfer;

\* that the $200,000 payment did not fall within the earmarking doctrine because it was not "simply a substitution of one creditor in a class for another creditor in the same class," citing *In re International Ventures, Inc.,* 214 B.R. 590 (Bankr. E.D.Ark.1997);

\* that Betty's was presumptively insolvent at the time of the transfer, pursuant to the rebuttable presumption of insolvency in 11 U.S.C. § 547(f);

\* that, because Cooper presented no evidence to rebut the presumption, Betty's was insolvent on the date of the transfer, citing *Armstrong v. John Deere Co.,* 90 B.R. 1006, 1009 (Bankr.D.N.D.1988); and

\* that, notwithstanding the foregoing, because there was no evidence as to "the amount of unsecured debt or the actual or proposed distributions afforded to unse-cured creditors," there was no evidence that Cooper received more by virtue of the transfer than it would have received in a Chapter 7 liquidation proceeding.

Since Betty's had the burden of proof on this element of a preference, the Bankruptcy Court denied its claim for preference. *In re Betty's Homes, Inc.* 393 B.R. 671 (Bkrtcy.W.D.Ark.2008).

4. Betty's appealed, contending that the Bankruptcy Court erred in finding there was not a preference. Cooper cross-appealed, contending that the Bankruptcy Court erred in finding that the earmarking doctrine did not apply.[2]

5. This Court reviews the factual findings of the Bankruptcy Court for clear error. The legal conclusions are reviewed *de novo. In re Racing Services, Inc.,* 540 F.3d 892, 897–98 (8th Cir.2008).

6. Betty's contends that the Bankruptcy Court's findings of fact are clearly erroneous because they are "internally inconsistent." Betty's describes this "inconsistency" as finding—on the one hand—that the transfer diminished Betty's estate; and finding—on the other hand—that the transfer was not a preference because there was no evidence that Cooper received more by means of the payment than it would have received in a Chapter 7 proceeding.

7. The Bankruptcy Code allows a trustee in bankruptcy to avoid as a preference

. . . any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

---

1. Cooper contends in its Brief that it had sent lien notices by late July, 2006 (page 7) but Latham's testimony does not support this contention.

2. Cooper makes many arguments in its Brief suggesting that it disagrees with the Bankruptcy Court's finding that Betty's was insolvent on the date of the transfer in question, and with the Bankruptcy Court's evidentiary rulings. Since Cooper did not. appeal on those bases, the Court will not address its arguments relating to them.

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition . . .; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

■ The burden of proving the avoidability of a transfer rests with the trustee. 11 U.S.C. § 547(g).

■ 8. The Court agrees with Betty's that it is inconsistent to find a debtor insolvent, and to find that a transfer diminishes the debtor's estate, but also to find that an unsecured creditor who receives the transfer does not receive more than it would in a hypothetical Chapter 7 proceeding. The fact that a debtor is insolvent means it cannot pay its debts in full: the Bankruptcy Code defines insolvent as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation." 11 U.S.C. § 101(32). A transfer that diminishes the estate leaves even fewer assets to distribute among creditors. It necessarily follows that an unsecured creditor who receives full payment of a portion of its claim will be in a better position than those who do not. *Cf. In re Hoffinger Industries, Inc.,* 313 B.R. 812 (Bkrtcy. E.D.Ark.2004):

The law is generally well settled that unless creditors would receive a 100% payment, any unsecured creditor who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation.

313 B.R. at 827 (internal quotation marks omitted).

The Bankruptcy Court found that Betty's was insolvent on the date of the transfer, and that the transfer diminished the estate. Thus, unless there is merit to the cross appeal by Cooper, the Bankruptcy Court erred as a matter of law in finding that the $200,000 payment to Cooper was not a preference. Accordingly, the Court will examine the cross appeal.

9. In its cross appeal, Cooper contends that the $200,000 payment was not a preference because it was not a "transfer of an interest of the debtor in property." Cooper contends that the transfer falls within an exception to preference law known as "earmarking."

■ The earmarking doctrine is an offshoot of § 547. As explained in *In re Bohlen,*

[w]hen new funds are provided by the new creditor to or for the benefit of the debtor for the purpose of paying the obligation owed to the old creditor, the funds are said to be "earmarked" and the payment is held not to be a voidable preference.

859 F.2d at 565.

■ In order for earmarking to apply, the creditors must both be of the same class. The reason for this is easy to understand.

(a) If both the old and the new creditor are *secured* creditors, the transfer is a zero-sum transaction. There is no avoidable transfer (preference) "because the loaned funds never-become part of the

debtor's property. Instead, a new creditor merely steps into the shoes of an old creditor." *In re Heitkamp,* 137 F.3d 1087, 1089 (8th cir.1998). Put another way, "[t]here is no diminution, directly or indirectly, of the fund to which creditors of the same class can resort for payment of their debts." *In re International Ventures, Inc., supra,* 214 B.R. at 595.

(b) If the old creditor is a *secured* creditor and the new creditor is an *unsecured* creditor, earmarking does not apply. "[I]f the debtor transfers a security interest in return for the funds, the debtor has, by giving a security interest in exchange for the payment of an unsecured debt, transferred an interest in property." *Id.*

■ Community First Bank, which funded the payment of $200,000 to Cooper, was a secured creditor. If Cooper was an unsecured creditor, earmarking would not apply; but if Cooper was secured, earmarking would apply. Accordingly, the issue of whether Cooper was a secured creditor is pivotal.

10. Cooper argues that it was a secured creditor in reliance on *In re Electron Corp.,* 336 B.R. 809 (10th Cir. BAP 2006), wherein the court held that a materialman who could have perfected its inchoate statutory lien—but had not done so—was a secured creditor for purposes of determining the avoidability of a transfer claimed to be preferential.

■ *In re Electron Corp.,* which relied on Colorado law, is not necessarily dispositive, because property rights in bankruptcy proceedings are determined by reference to the law of the state where the property is located. *Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The Court, therefore, turns to Arkansas lien law to determine whether the

*In re Electron Corp.* analysis applies to the case at bar.

Under Arkansas law,

[e]very ... material supplier ... who supplies ... material ... in the construction ... of an improvement to real estate ... upon complying with the provisions of this subchapter, shall have, to secure payment, a lien upon the improvement....

A.C.A. § 18–44–101(a). This lien "date[s] from the time that the construction ... first commenced." A.C.A. § 18–44–110(a).

■ Arkansas law permits perfection of a materialman's lien against an entity that acquired rights in the property before such perfection, and under 11 U.S.C. § 546(b)(1)(A), post-petition perfection of a lien is authorized if it is authorized under state law. See *In re McCord,* 219 B.R. 251, 252 (Bkrtcy.E.D.Ark.1998), wherein the Bankruptcy Court explained that:

[u]nder Arkansas law, every mechanic, laborer, or other persons who performs any work or furnishes material for building or for repairing any building by virtue of a contract with the owner or agent, has a lien upon the building, so long as the person complies with the requirements of the statute. The lien attaches to buildings or other improvements and is given preference, with some exceptions, to prior and subsequent liens, encumbrance, or mortgages. To comply with the statute, and thereby perfect the lien, the laborer or vendor must file a verified account of the amount owing and a description of the property with the clerk of the circuit court within 120 days after the work is performed or materials furnished. If a complaint is filed with the Circuit Clerk, that document suffices to perfect the lien. Once the lienor has substantially complied with the statute, the lien arises

and relates back to the time of the performance.

Thus, since Supershine filed a verified complaint with the Circuit Court within 120 days of the performance of its contract with the debtors, it complied with the mechanics' lien statute and, under Arkansas law, has a valid mechanics' lien. Bankruptcy Code section 546 not only preserves this lien, but also permits the post-petition perfection of this lien. The interest in the property arose and existed pre-petition, and because later perfection and relation-back is permitted under Arkansas law, section 546 also permits that perfection to be made and relate back to a pre-petition date. The filing of the bankruptcy petition did not terminate Supershine's right to timely perfect its mechanic's lien.

219 B.R. at 252 (internal citations omitted).

The import of the foregoing authorities is that in Arkansas, a materialman's lien arises by statute on the date construction begins; it remains inchoate until it is perfected for expires by failure to timely perfect; and upon perfection, it relates back to the date construction began.

On the date of the $200,000 transfer in this case, Cooper had inchoate materialman's liens on several of Betty's properties—as to which the time to perfect was running out but had not expired. No party contends that these liens were not later timely perfected. The filing of Betty's bankruptcy petition did not terminate Cooper's right to timely perfect its materialman's liens and, upon perfection, the liens

were not avoidable under the Bankruptcy Code.[3] Under the *In re Electron Corp.* analysis, this state of affairs places Cooper in the category of a secured creditor. That being the case, the transfer of $200,000 from Community First Bank to Cooper was a transfer from one secured creditor to another—which falls within the parameters of the earmarking doctrine. It was, thus, not an avoidable transfer as defined in 11 U.S.C. § 547(b).

11. Although the foregoing analysis is not the basis upon which the Bankruptcy Court determined that no avoidable transfer had occurred, it is a well-established rule of law that the decision of a lower court may be affirmed if it reached the right result—albeit for the wrong reason. *Hendricks v. Lock,* 238 F.3d 985, 987 (8th Cir.2001). The decision of the Bankruptcy Court is, therefore, **affirmed.**

**IT IS SO ORDERED.**

---

3. This conclusion is borne out by the terms of the Confirmed Plan Of Liquidation Of Betty's Homes, Inc., which states, as to Class 3, Claims of Perfected Lien Claimants, that.

  [a] Perfected Lien Claimant is a secured creditor of the Debtor who is not. a Secured Mortgage Claimant and who perfected its

lien in and to an asset of the Debtor by the filing of appropriate notices and documentation in the appropriate governmental office and according to Arkansas law on or before 12.08 PM Central Time on Friday, 20th October 2006.